United States Court of Appeals,

Fifth Circuit.

No. 96-60389.

Irene Stone O'NEAL;  Linda T. Hughes, Plaintiffs-Appellants,

v.

MISSISSIPPI BOARD OF NURSING;  Marcella L.  McKay, R.N., M.S.N., Executive Director;  Laura Kelley, R.N., President, individually and in her official capacity as member of the Mississippi Board of Nursing;  Barbara Hayman, R.N., Secretary, individually and in her official capacity as member of the Mississippi Board of Nursing;  Gladys Hughes, L.P.N., Treasurer, individually and in her official capacity as member of the Mississippi Board of Nursing;  Iva Mae Blackledge, L.P.N., individually and in her official capacity as member of the Mississippi Board of Nursing;  Peggy Brady, L.P.N., individually and in her official capacity as member of the Mississippi Board of Nursing;  Mary Patricia Curtis, R.N., F.N.P., individually and in her official capacity as member of the Mississippi Board of Nursing;  Cleopatra Hudson, L.P.N., individually and in her official capacity as member of the Mississippi Board of Nursing;  Thelma Latham, Consumer;  individually and in her official capacity as member of the Mississippi Board of Nursing;  Karen Saucier Lundy, R.N., individually and in her official capacity as member of the Mississippi Board of Nursing;  LaDonna Kay Northington, R.N., individually and in her official capacity as member of the Mississippi Board of Nursing;  Renee Williams, R.N., individually and in her official capacity as member of the Mississippi Board of Nursing;  Charlotte Wood, R.N., individually and in her official capacity as member of the Mississippi Board of Nursing, Defendants-Appellees.

May 29, 1997.

Appeal from the United States District Court for the Southern District of Mississippi.

Before REYNALDO G. GARZA, HIGGINBOTHAM and JONES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

*Background*

Plaintiffs, Irene Stone O'Neal and Linda Hughes, brought this § 1983 action against the Mississippi State Board of Nursing, its executive director, and the board members in their official and individual capacities, for allegedly violating their Fourteenth Amendment Due Process rights when their license to practice nursing was revoked following adjudicatory hearings.  Each plaintiff's license was rescinded for "falsifying, or in a repeatedly negligent manner making incorrect entries on records."  The Board's decision was initially affirmed after an appeal to the Chancery Court, but later reversed by the Mississippi Court of Appeals on the grounds that there was no substantial evidence in the record of either case to establish that either plaintiff acted with fraudulent intent, carelessness, or inattentiveness.  Plaintiffs subsequently sued defendants in federal court under § 1983 for alleged

violations of their constitutional rights. They contended that these rights were violated when the Board initially revoked their licenses and by unreasonably delaying their reinstatement once the board's decision was overturned.

Defendants' moved for summary judgment asserting that any action against the Board or its Officials in their official capacities was barred by the doctrine set out by the Supreme Court in *Will v. Michigan Dept. Of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), and the Eleventh Amendment. Additionally, defendants' claimed that the individual members of the Board, in their individual capacities, were entitled to absolute quasi-judicial immunity. In their response, plaintiffs conceded that the action against the Board, as an entity, was barred by the *Will* doctrine. However, they claimed that they were entitled to proceed against "the Board's officials and members in their individual capacities" under § 1983.[1] They contended that individual members of the Board, along with its Director, were only entitled to qualified immunity [not absolute immunity] and, thus, precluded from a judgment as a matter of law.

Judge Tom S. Lee, of the Southern District of Mississippi, found that the Board officials and members were entitled to absolute quasi-judicial immunity and accordingly granted defendants' motion. In his Memorandum Opinion, Judge Lee observed that public officials were entitled to absolute quasi-judicial immunity when they engaged in acts that were adjudicatory in nature. R. 85. He also noted that the plaintiffs' hearings took place in a context of procedural safeguards and that the Board decisions were subject to review. Id.

Appellants timely filed their notice of appeal from this final judgment.

*Discussion*

The Supreme Court has recognized two kinds of immunity under a § 1983 claim: "qualified immunity" and "absolute immunity." Under "qualified immunity," government officials are not subject to liability for the performance of their discretionary actions unless their conduct violates clearly

---

[1]In light of plaintiffs' concessions and the fact that they assert that they may proceed against the members and officials of the board merely in their "individual capacities", we can only assume that they also abandoned their claims against the members and officials in their official capacities as these too would have been barred under the *Will* doctrine.

established statutory or constitutional rights which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "Absolute immunity" denies a person whose federal rights have been violated by a government official any type of remedy, regardless of the conduct. As such the Supreme Court has been "quite sparing" in recognizing absolute immunity. *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988).

Although the Supreme Court has been rather conservative in its grants of absolute immunity, it has recognized that there are some officials whose duties require a full exemption from liability. Such officials include judges performing judicial acts within their jurisdiction, *Bradley v. Fisher,* 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871), prosecutors in the performance of their official functions, *Yaselli v. Goff,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927), and certain "quasi-judicial" agency officials who, irrespective of their title, perform functions essentially similar to those of judges or prosecutors, in a setting similar to that of a court. *Butz v. Economou,* 438 U.S. 478, 511-17, 98 S.Ct. 2894, 2913-16, 57 L.Ed.2d 895 (1978). Naturally, the defendants claim that they fall within this latter category, while the plaintiffs feel that their opposition's reliance on *Butz* is misplaced.

Applying the Supreme Court's jurisprudence, this court recently held that in order to determine whether a government official is absolutely immune from suit, the proper focus should not be the identity of the party claiming the immunity, but rather his "role in the context of the case." *Mays v. Sudderth,* 97 F.3d 107, 110 (5th Cir.1996). In other words, immunity attaches to particular official functions, not to particular offices. *Forrester,* 484 U.S. at 229, 108 S.Ct. at 545 (1988). If the functions are of a judicial nature then we must weigh the costs and benefits of denying or affording absolute immunity. *Mylett v. Mullican,* 992 F.2d 1347, 1352 (5th Cir.1993). The following factors are characteristic of the judicial process and are variables to be considered in determining absolute as contrasted with qualified immunity:

> 1. the need to assure that the individual can perform his functions without harassment or intimidation;
>
> 2. the presence of safeguards that reduce the need for private damages actions as a means of

controlling unconstitutional conduct;

3. insulation from political influence;

4. the importance of precedent;

5. the adversary nature of the process;  and

6. the correctability of error on appeal.

*Cleavinger v. Saxner,* 474 U.S. 193, 202, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985) (*citing Butz,* 438 U.S. at 512, 98 S.Ct. at 2913-14).  No one factor is controlling and the list of considerations is not intended to be exclusive.  *Mylett,* 992 F.2d at 1352.

The nursing board undisputedly functions as an adjudicatory body in many situations, including the present case.[2]  The Board's functions are judicial in nature and its members' role comparable to that of a judge.  The Board and its members administer oaths, compel the attendance of witnesses, allow parties to present the testimony of witnesses as well as cross-examine witnesses who testify against them, permit parties to be represented by counsel, and most importantly make findings of fact and assess punishments or accolades in accordance with these findings.  The board director and its members were acting in their "quasi-judicial", i.e. adjudicatory, capacity when they revoked the plaintiffs' licenses.

In applying the *Butz* factors, it is apparent that at least five out of the six factors are sufficiently satisfied, with the one exception being merely questionable.  First, it is imperative that the members of the Board, including the Director, be allowed to perform their duties free from potential

---

[2]The Mississippi State Board of Nursing is a state agency which consists of thirteen health service professionals appointed by the governor.  MISS.CODE ANN. § 73-15-9.  The Board, *inter alia,* conducts adjudicatory disciplinary proceedings regarding nurses licensed to practice in Mississippi.  *See* MISS.CODE ANN. § 73-15-1, *et seq.*  The statutory function of the Board includes the duty to "issue subpoenas, require attendance of witnesses, and administer oaths of persons giving testimony," MISS.CODE ANN. § 73-15-17(c), and to "conduct hearings upon charges calling for discipline of a licensee or revocation of a license," § 73-15-17(e).  The statute establishes a detailed procedure for disciplinary proceedings before the Board.  Charges may be brought on a sworn affidavit;  the Board must provide notice at least 15 days before a hearing;  the Board enjoys subpoena power on its own behalf and on behalf of the accused;  and the accused enjoys a right of counsel at the hearing, may produce witnesses at the hearing, and may cross-examine witnesses.  MISS.CODE ANN. § 73-15-31(1)-(4).  Furthermore, nurses who lose before the board may appeal their cases in the state court system.  MISS.CODE ANN. § 73-15-31(9).

harassment or intimidation (i.e. a lawsuit). The Board is empowered to make difficult and controversial decisions, such as the one made in this case, which may negatively affect an individual's life. It's only natural that these individuals may want some kind of redress. It's important that the members of the board make these decisions free from the threat of incurring personal liability for every decision they hand down.

Second, as is evident under the Mississippi statutes and according to Judge Lee's finding, there are a multitude of safeguards which reduce the need for private damages. Procedural safeguards such as the right to counsel, adequate notice of a hearing, and the opportunity to present and cross-examine witnesses are all readily available to any person charged by the board. It was the lack of these safeguards in the two main cases relied on by the appellants which persuaded the Supreme Court to hold that school board members, in the context of student disciplinary hearings, *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), and prison official who served on an "Institutional Discipline Committee," *Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), to be granted only qualified immunity rather than absolute immunity.[3]

Third, as previously mentioned, members of the Board are appointed by the Governor and are, therefore, to some extent shielded from political influence. Additionally, members are appointed for staggered terms for four years and no member may serve more than two consecutive terms. MISS.CODE ANN. § 73-15-9(3). The members of the board are neutral and independent members and are under no pressure to resolve disputes in favor of one party or another.

Fourth, while the record is unclear as to whether the board was bound by precedent, we nevertheless feel that this one factor is not controlling and is greatly overshadowed by the convincing

---

[3]In *Butz,* the Supreme Court held that Federal Hearing Examiners were guided by safeguards that could be found in the Administrative Procedure Act (APA). However, the Court also indicated that unless Congress should direct it otherwise, it would be "incongruous and confusing" to distinguish between state and federal officials in deciding on immunity from § 1983 actions. *Butz,* 438 U.S. at 499, 98 S.Ct. at 2907. "It would seem to follow, therefore, that state officials subject to restraints *comparable to* those imposed by the APA and performing adjudicatory functions in resolving potentially heated controversies are entitled to absolute immunity from damages liability for their judicial acts." *Watts v. Burkhart, M.D., et al.,* 978 F.2d 269, 273 (6th Cir.1992) (emphasis added). Such is the present situation. The Board was restrained by Mississippi statutes that were comparable to the APA.

nature of the five other variables.

Fifth, given the fact that parties have a right to counsel, are able to present witnesses, and cross-examine adverse witnesses, the process seems inherently adversarial.

Finally, as expressly stated in the Mississippi code and, again, as is obvious in the present case, there is more than adequate opportunity to correct any error made by the board on appeal.

Before weighing all these factors, it is also important to note the decision of other circuits. Not only has the Supreme Court, in *Butz,* extended absolute immunity to "quasi-judicial" officials whose duties are functionally comparable to those of a judge (i.e. federal hearing examiners), but at least three of our sister courts have found medical/health profession boards and their members to be absolutely immune from liability when performing adjudicatory actions. *Bettencourt v. Board of Registration in Medicine of the Commonwealth of Massachusetts,* 904 F.2d 772 (1st Cir.1990); *Horwitz v. State Board of Medical Examiners of the State of Colorado,* 822 F.2d 1508 (10th Cir.1987); *Watts v. Burkhart, M.D., et al.,* 978 F.2d 269 (6th Cir.1992). In light of the benefits outweighing the costs of granting absolute immunity as well as the informed decisions of our sister courts, it would be an injustice not to hold the Board members and the Director absolutely immune.

### *Conclusion*

Accordingly, we find that all members of the Board and the Director, in their individual capacities, should be entitled to absolute immunity. AFFIRMED.