Dena Lynne DAVISTON

v.

LOUISIANA STATE BOARD
OF NURSING, et al.

Civil Action No. 97–1236–A.

United States District Court,
W.D. Louisiana,
Alexandria Division.

Jan. 27, 1998.

A. Dale Smith, David A. Johnson, Ball, LA, for Plaintiff.

E. Wade Shows, Ronnie J. Berthelot, Robert J. Burns, Jr., Shows Cohn & Cali, Baton Rouge, LA, for Defendants.

### *RULING*

NAUMAN S. SCOTT, District Judge.

This matter is before the court on motion by defendants Louisiana State Board of Nursing ("LSBN"), Betty Jo Aguillard, Kathleen Cooper, Dr. Oswald Ferry, Margaret Griener, Sherry L. Haley, Maxine Johnson, Patsy McLanahan, Dr. Enrica Singleton, Tanny Jo Van Zile, Dr. Vincent A Cullota, Jr., and Dr. Eli Sorkow (collectively, the "individual defendants") for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment under Rule 56.

### *Background*

The LSBN is charged with regulating the nursing profession in the State of Louisiana. Among the duties and powers of the LSBN are the power to "[d]eny, revoke, suspend, probate, limit or otherwise restrict licenses" of nurses practicing within the state. La. Rev.Stat.Ann. 37:918(6). LSBN members are accorded civil immunity for actions taken "within the scope of the duties, powers, and functions of the [LSBN] when acting without malice and in the reasonable belief that the action taken is within the [LSBN's] and such individual's authority." La.Rev.Stat.Ann. 37:931B.

Plaintiff Dena Lynne Daviston ("plaintiff" and/or "Daviston") is a registered nurse practicing her profession in the State of Louisiana. Daviston received her license to practice as a registered nurse in 1988. By order dated November 24, 1993, Daviston's nursing license was suspended by the LSBN for a minimum of one year for reasons related to abuse of alcohol. Daviston submits that she is a recovering alcoholic. (*See* Complaint For Damages And Declaratory Relief, ¶ 10.)

By order of the LSBN, Daviston's application for reinstatement was made contingent on, inter alia, her agreement and adherence to a contract with the Recovering Nurse Program ("RNP") for a minimum of one year. Daviston applied for reinstatement of her license in November 1995. By order dated November 16, 1995, the LSBN denied reinstatement for an additional period of one year. Reinstatement was again made contingent on adherence to a contract with the RNP. A state court challenge (the "state court suit") to the November 1995 denial of reinstatement was resolved in favor of the LSBN. On November 16, 1996, Daviston was reinstated by order of the LSBN.

As part of her post-reinstatement contract with the RNP, Daviston submitted to random urinalysis tests for the presence of alcohol. A test conducted on December 13, 1996 resulted in a positive reading. Another positive result was obtained on January 16, 1997. Daviston contends that the positive readings were "false positives." (*See* Complaint For Damages and Declaratory Relief ¶ 18.) Following the initial test, Daviston was informed that she could not work until she had completed relapse therapy.

On or about February 6, 1997, the LSBN summarily suspended Daviston's license for two years due to the positive test results. On March 25, 1997, the LSBN reversed its position and reinstated Daviston's license, stating that its Medical Review Officer, Dr. Ken Thompson, had notified the LSBN that he could not be reasonably certain that ingestion of alcohol was the reason for the positive reading obtained through urinalysis. (*See* Memorandum In Opposition To Motion To Dismiss, Or Alternatively, For Summary Judgment, Exhibit 3.)

Daviston contends that, since 1988, the LSBN has been aware that she is an insulin-dependent diabetic. Plaintiff further contends that the LSBN had been informed and knew or should have known that the use of urinalysis to detect the presence of alcohol is generally suspect, and that urinalysis testing for alcohol on insulin-dependent diabetics is extremely unreliable.

Plaintiff avers that the actions of the LSBN and the individual defendants violated the qualified immunity conferred by statute in that:

(a) defendants did not make a reasonable effort to obtain the facts of the matter;

(b) the notice and hearing procedures afforded Daviston were inadequate; and

(c) Daviston was granted no pre-deprivation hearing whatsoever, and the post-deprivation remedies are inadequate because of the qualified immunity established by statute. (*See* Complaint For Damages and Declaratory Relief ¶ 47.)

Daviston brings this suit against the LSBN and the individual defendants. Count I of the complaint seeks to have La.Rev.Stat. 37:931B declared unconstitutional and enjoined. Count II seeks an award of compensatory and punitive damages from the LSBN and the individual defendants for the alleged deprivation of constitutional and civil rights suffered by Daviston.

Presently before the court is defendants' motion to dismiss, or, in the alternative, for summary judgment. The LSBN and the individual defendants assert various defenses, arguing that this court is without subject matter jurisdiction to hear Daviston's complaint in that (1) the defendants are not "persons" for the purposes of § 1983; (2) defendants are entitled to immunity from suit under the Eleventh Amendment; (3) because there is no independent basis for jurisdiction, a declaratory judgment action cannot lie; and (4) the complaint amounts to a collateral attack on a final state court judgment, which, according to the *Rooker/Feldman* doctrine, a district court lacks jurisdiction to hear. Defendants further argue that if jurisdiction exists, abstention doctrine dictates that this court decline to exercise its jurisdiction. Finally, defendants assert absolute immunity from suit, as well as qualified immunity under both state and federal law.

## I. Are The Defendants "Persons" Under 42 U.S.C. § 1983?

■ Daviston's claim for relief arises under 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, or the District of Columbia" deprives another of rights secured by the Federal Constitution shall be "liable to the party injured in an action at law, suit in equity, or other proper proceeding." The LSBN contends, and Daviston readily concedes, that the LSBN is not a "person" under § 1983 (*see* Memorandum In Opposition To Motion To Dismiss, Or Alternatively, For Summary Judgment at 18). Disagreement centers on whether the individual defendants are § 1983 "persons."

The well-established rule is that a state official, sued for monetary relief in his official capacity, is not a "person" under § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).[1] By contrast, a state official sued for monetary relief in his personal capacity is subject to suit under § 1983. *See Hafer v. Melo,* 502 U.S. 21, 26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). The somewhat confusing distinction between official and personal capacity received a degree of clarification in *Hafer,* where the Court said that "the phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *See id.*

A reading of the complaint suggests that with respect to the claim for monetary damages asserted in Count II, Daviston has instituted suit against the individual defendants in their personal capacities. As the Supreme Court has stated, "[o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). This is precisely what Daviston has alleged: that the individual defendants, in the performance of their duties as LSBN members, violated the guarantees of procedural and substantive due process by failing to provide a hearing. (*See* Complaint For Damages and Declaratory Relief, ¶¶ 37, 38.)

---

1. However, when sued in an official capacity for injunctive relief, a state official is a "person" for § 1983 purposes "because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Hafer,* 502 U.S. at 27 (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

Clearly, the individual defendants must be considered "persons" subject to § 1983 suit.[2]

## II. Eleventh Amendment Immunity

The Eleventh Amendment confirms the notion, basic to a federal form of government, that each state is a sovereign entity, and that "[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without ... consent." *Hans v. Louisiana*, 134 U.S. 1, 13, 10 S.Ct. 504, 33 L.Ed. 842 (1890). This immunity extends to state entities such as boards, commissions, departments, and agencies. Plaintiff acknowledges that the Eleventh Amendment bars suit against the LSBN. (*See* Memorandum In Opposition To Motion To Dismiss, Or Alternatively, For Summary Judgment at 15–16.) Counts I and II, therefore, will be dismissed as to the LSBN.

■ At issue is whether Daviston's claim for compensatory and punitive damages against the individual defendants, set forth in Count II, is barred. The Eleventh Amendment precludes suits in federal court "by private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, this prohibition extends only to suits for money damages against state officers in their official capacities. Damages awards against individual defendants in federal courts "are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). When a state official, in the performance of official duties, violates the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Ex parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908). A review of the complaint lodged by Daviston suggests that she seeks to impose liability on the individual defendants for what she alleges was a depri-

vation of federally guaranteed rights under color of state law. Such a claim is not barred by the Eleventh Amendment, *see Scheuer*, 416 U.S. at 238, and accordingly the motion to dismiss Count II as to the individual defendants will be denied.

■ Likewise, the motion to dismiss Count I as to the individual defendants will also be denied. The Eleventh Amendment does not bar claims for declaratory and/or prospective injunctive relief brought against state officers in their official capacities. *See Kentucky v. Graham*, 473 U.S. at 169 n. 18 ("In an injunctive or declaratory action grounded on federal law, the State's immunity can be overcome by naming state officials as defendants.")

## III. Rooker/Feldman Doctrine

■ Defendants contend that the instant suit is merely a collateral attack on the earlier state court suit and, as such, is barred by the so-called "*Rooker/Feldman* doctrine," which precludes federal jurisdiction over such controversies. This argument is without merit. The present suit clearly refers to actions taken by the LSBN and the individual defendants with respect to the suspension and subsequent revocation of Daviston's license in the December 1996 to February 1997 period following positive test results. This was not the subject of the earlier state court suit, which challenged the LSBN's refusal to reinstate Daviston's license following a one-year suspension. Thus, the *Rooker/Feldman* doctrine is not applicable here.

## IV. Declaratory Judgment Action

■ The Declaratory Judgments Act, 28 U.S.C. § 2201, does not provide an independent basis of federal jurisdiction. However, inasmuch as Daviston states a cognizable claims under § 1983, this court properly has jurisdiction under 28 U.S.C. § 1331 and/or 28 U.S.C. § 1343(3) Thus, a declaratory judgment action can lie.

---

2. With respect to Daviston's claim for declaratory and injunctive relief asserted in Count I, suit is brought against the individual defendants in their official capacities.

## V. Burford Abstention

Defendants urge that under the doctrine announced in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), this court should decline to exercise its jurisdiction. Under the *Burford* doctrine, a federal court must decline to interfere with the orders or proceedings of state administrative agencies (1) if there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) if the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). As the foregoing suggests, the essence of *Burford* abstention is the protection of complex state administrative processes from federal interference. *See New Orleans Pub. Serv.*, 491 U.S. at 362. However, abstention is not required whenever a complex state administrative process is present, nor in all cases where a potential for conflict with state regulation or policy exists. *See id.* (citing *Colorado River*, 424 U.S. at 815–16).

Inasmuch as Daviston's complaint neither states a claim under Louisiana law nor asserts federal claims that are "entangled with a skein of state law that must be entangled before the case can proceed," *New Orleans Pub. Serv.*, 491 U.S. at 361 (quoting *McNeese v. Board of Education for Community Unit School Dist. 187, Cahokia*, 373 U.S. 668, 674, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963)), it is readily apparent that the instant case is not a candidate for *Burford* abstention. The thrust of Daviston's complaint is that her Fourteenth Amendment rights were violated by the LSBN and the individual defendants. She seeks damages, a declaration of the rights of the parties, and prospective injunctive relief. The resolution of this claim will require the court to do little more than determine whether the defendants' ac-

tion were violative of Daviston's rights under the Federal Constitution. Such an inquiry will not disrupt the state's efforts to establish a coherent policy with respect to the regulation of the nursing profession nor disrupt a complex administrative process established by the state. It may, of course, result in an injunction against similar state action in the future, but "there is ... no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." *Zablocki v. Redhail*, 434 U.S. 374, 380 n. 5, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978).

## VI. Absolute Immunity

Defendants also assert a claim of absolute immunity, arguing that the defendants acted in a quasi-judicial capacity with respect to their suspension and revocation of Daviston's nursing license. As the Fifth Circuit recently explained in *O'Neal v. Mississippi Board of Nursing*, 113 F.3d 62 (5th Cir.1997), a six-factor test is used to determine whether the functions of agency actors are quasi-judicial and entitled to absolute immunity. The factors are:

1. The need to assure that the individual can perform his functions without harassment or intimidation;

2. The presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;

3. Insulation from political influence;

4. The importance of precedent;

5. The adversary nature of the process;

6. The correctability of error on appeal.

*Id.* at 65. No one factor is controlling. *See id.*

While this court recognizes the value of protecting administrative decision makers from harassing lawsuits, this is but one consideration in the absolute immunity inquiry. Daviston alleges that her license was summarily suspended following a positive test result "without any pre-deprivation due process at all, despite a request from Daviston for a hearing." (Memorandum In Opposition To Motion To Dismiss, Or Alternatively, For

Summary Judgment, at 26.) Taking this allegation to be true, as we must, it is apparent that the defendants' decision to suspend or revoke Daviston's license was taken in the absence of procedural safeguards, such as a hearing affording representation by counsel and the opportunity to produce evidence and cross-examine opposing witnesses. The absence of a hearing also implies that the decision was taken in a non-adversarial context. Other courts have been disinclined to grant absolute immunity in the absence of such safeguards, *see Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), and we are likewise reluctant to confer absolute immunity for decisions made in such a setting, particularly in view of the availability of qualified immunity.

### Qualified Immunity

■ The individual defendants argue that they are entitled to summary judgment based on their qualified immunity from § 1983 suit. The court agrees that these defendants may assert a defense of qualified immunity, but finds the record insufficient to support summary judgment on this basis.

Where a defense of qualified immunity is asserted by a § 1983 defendant in a motion for summary judgment, the initial question for the court is whether the plaintiff's allegations are sufficient to overcome the qualified immunity defense. *See Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). To do so, the plaintiff must allege "the violation of a clearly established constitutional right." *Siegert,* 500 U.S. at 231. The second step in the qualified immunity inquiry is a determination of "whether the defendant's conduct was objectively reasonable." *Spann v. Rainey,* 987 F.2d 1110, 1114 (5th Cir.1993).

Here, Daviston generally alleges that the deprivation of her right to practice as a registered nurse, undertaken without benefit of notice and a hearing, was violative of her due process rights. As numerous decisions have established, "[d]ue process, unlike some legal rules, is not a technical conception with a fixed content, unrelated to time, place and circumstances." *Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Under the well-established test, the determination of the procedures required in a given situation demands consideration of three factors: the private interest that will be affected by the official action; the risk of an erroneous deprivation through the procedures used, and the probable value of additional or substitute procedural safeguards; and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional procedural requirement would entail. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

In the instant case, Daviston alleges that her ability to practice and earn a livelihood as a registered nurse was impaired through the use of procedures that posed "an extreme risk of erroneous deprivation," (Memorandum In Opposition To Motion To Dismiss, Or Alternatively For Summary Judgment, at 33), whereas alternative procedures might have yielded more reliable results. Defendants have not argued that the burden of alternative procedures would have been onerous. Under the above standard, the court finds that Daviston has alleged the deprivation of a clearly established right to a pre-deprivation hearing.[3]

The second prong of the qualified immunity inquiry requires the court to determine if the defendant's conduct was objectively reasonable in light of clearly established law. In this case, however, the record is insufficiently developed to permit such a determination. The question of whether the defendants acted reasonably in suspending Daviston's license on the basis of urinalysis

---

**3.** The right to a "sufficiently prompt" post-deprivation hearing, *see FDIC v. Mallen,* 486 U.S. 230, 241, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988), is also alleged by Daviston and is clearly implicated here.

tests may depend, for example, on the precise degree of reliability of the screening test utilized, the defendants' knowledge regarding the reliability of the test for an insulin-dependent diabetic such as Daviston, and the terms of the agreement between Daviston and the LSBN/RNP. Other factors may well be relevant. Being unable to determine, on the record, whether the defendants' conduct was objectively reasonable, the court must deny the motion for summary judgment.[4]

Accordingly, Count I and Count II are **DISMISSED** as to defendant Louisiana State Board of Nursing; defendants' Motion to Dismiss Counts I and Count II as to the individual defendants is **DENIED;** and defendants' Motion for Summary Judgment is **DENIED**.

---

4. Likewise, the test for qualified immunity under state law requires a determination of whether the defendant acted "without malice and in the reasonable belief that the action taken is within the board's and such individual's authority." La. Rev.Stat.Ann. 37:931B. This is judged by an objective standard and is "generally a jury question because it involves factual issues." *Smith v. Our Lady of the Lake Hosp. Inc.*, 639 So.2d 730, 746 (La.1994). In the case at hand, while the individual defendants establish by deposition that they bore no malice toward Daviston and had no reason to believe the test results in error, this is called into question by allegations that the defendants knew that Daviston was an insulin-dependent diabetic and knew or should have known that the test utilized was unreliable for such a person. Thus the good faith of the defendants remains an issue, and summary judgement is inappropriate based on the record before the court.