# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 25, 2020

Lyle W. Cayce
Clerk

No. 19-20661

Spec's Family Partners, Limited,

*Plaintiff—Appellant*,

*versus*

The Executive Director of The Texas Alcoholic Beverage Commission, Adrian Bentley Nettles, *ex officio*; Dexter K. Jones; Emily E. Helm; Judith L. Kennison; Matthew Edward Cherry,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC 4:18-CV-2670

Before Davis, Graves, and Duncan, *Circuit Judges*.

Stuart Kyle Duncan, *Circuit Judge*:

Spec's Family Partners sued officials in the Texas Alcoholic Beverage Commission ("TABC") after TABC investigated Spec's and brought a largely unsuccessful administrative action against it. We must decide whether the district court correctly concluded that various forms of immunity required dismissal of Spec's' claims. We affirm in part, reverse in part, and vacate in part.

No. 19-20661

## I.

Because the district court dismissed this case under Federal Rule of Civil Procedure 12(b)(1), we take the factual allegations in the complaint as true. *See Wooten v. Roach*, 964 F.3d 395, 402 (5th Cir. 2020).

This case arises out of an investigation and administrative proceedings by TABC against Spec's Family Partners ("Spec's"). The key individual players are Dexter Jones, Chief of Audit and Investigations for TABC; Emily Helm, former TABC General Counsel; Judith Kennison, TABC Deputy General Counsel; and Matthew Cherry, a TABC attorney.

Spec's operates stores across Texas under the name Spec's Wines, Spirits & Finer Foods. In late 2012 or early 2013, TABC received a complaint that Spec's was engaged in various violations of state law and regulations, so it began investigating. The investigation lasted approximately three years. While the investigation was ongoing, TABC invited Spec's officials to a meeting at which settlement was discussed. TABC demanded over $8 million from Spec's to resolve violations allegedly uncovered during the investigation. Spec's declined.

After its investigation ended in February 2016, TABC issued Spec's a Notice of Violation letter alleging Spec's had violated various laws and regulations. TABC filed the letter with the Texas State Office of Administrative Hearings ("SOAH"), which began administrative proceedings against Spec's. In the SOAH action, TABC sought cancellation or suspension of all 164 permits related to Spec's stores. In the alternative, TABC sought civil penalties of up to $713,050,000.

While the SOAH case was pending, Spec's continued to submit applications to TABC. It applied for two new store permits and one change-of-address permit for an existing store. TABC placed administrative holds on all three applications, and then protested them with the SOAH. TABC also refused to grant regular renewals of existing Spec's licenses while the SOAH proceedings were pending.

The SOAH consolidated TABC's three protests with the original Spec's case. Ultimately, the SOAH Administrative Law Judges ("ALJs") ruled in Spec's' favor on every allegation except one involving a credit law violation. For that violation, the ALJs recommended a warning. They also recommended that the three protested applications be granted.

Spec's then sued several TABC officials (collectively, "Defendants") in federal court, bringing claims under 42 U.S.C. § 1983, the Sherman Act, and state law. It also sought declaratory relief under 28 U.S.C. § 2201, and injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908). Finally, it sought a declaration that Defendants' acts were *ultra vires*.

The district court granted Defendants' motion to dismiss, reasoning Defendants were entitled to various forms of immunity. First, it held Defendants enjoyed absolute immunity from the § 1983 claims. Second, it concluded that sovereign immunity barred the injunctive and declaratory claims against Defendants in their official capacities. Third, it held the Sherman Act claims were barred by state-action immunity. Finally, having dismissed all of Spec's' federal claims, the court declined to exercise supplemental jurisdiction over its remaining state law claim. Spec's timely appealed.

## II.

We review dismissal of Spec's' claims *de novo. See Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 734 (5th Cir. 2020). "In determining immunity, we accept the allegations of the plaintiffs' complaint as true." *Singleton v. Cannizzaro*, 956 F.3d 773, 779 (5th Cir. 2020) (cleaned up). We review the district court's decision not to exercise supplemental jurisdiction for abuse of discretion. *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 601–02 (5th Cir. 2009).

## III.

Spec's' arguments regarding absolute immunity fall into two groups. First, Spec's argues that Defendants are not entitled to immunity from claims that they took wrongful acts while the SOAH case was proceeding:

namely, placing holds on Spec's' applications, protesting those applications, and refusing to issue regular permit renewals.[1] Second, Spec's contends that Defendants are not immune from its claims that, as part of their investigation, they intentionally procured false testimony to use against Spec's in settlement negotiations and during the SOAH proceedings.

The district court ruled that absolute immunity shields Defendants from both claims. We agree that Defendants enjoy absolute immunity from the claims regarding their allegedly wrongful acts taken while the SOAH case was proceeding. But we disagree that Defendants are absolutely immune from the claim that they intentionally concealed information from a TABC auditor during the investigation. We therefore affirm in part and reverse in part the district court's judgment on this issue.

## A.

"[P]rosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (citations omitted) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)); *see also Wooten*, 964 F.3d at 407. Similarly, "executive branch officials, when participating in a federal administrative agency's adjudicative process, are entitled to absolute immunity because they perform functions comparable to those of judges and prosecutors." *Beck v. Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 634 (5th Cir. 2000). This principle extends to state agency officials. *See id.*; *see also O'Neal v. Miss. Bd. of Nursing*, 113 F.3d 62, 65 (5th Cir. 1997). In assessing whether those officials qualify for absolute immunity, we apply a nonexhaustive list of factors from the Supreme Court's decision in *Butz v. Economou*, 438 U.S. 478, 512 (1978). *See Disraeli v. Rotunda*, 489 F.3d 628, 631 (5th Cir. 2007). Those factors include:

---

[1] Spec's' complaint and its brief on appeal group these three acts together, so we analyze them accordingly.

(1)  the need to assure that the individual can perform his functions without harassment or intimidation;

(2)  the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;

(3)  insulation from political influence;

(4)  the importance of precedent;

(5)  the adversary nature of the process; and

(6)  the correctability of error on appeal.

*Id.* (citing *Beck*, 204 F.3d at 634). "No one factor is controlling." *Id.*

## B.

Spec's' complaint alleges that, while TABC's original SOAH case was proceeding, Defendants[2] wrongfully placed holds on three permit applications, protested those applications, and refused to renew existing permits. Applying the *Butz* factors, we conclude that, in taking those actions, Defendants were acting in a prosecutorial role and are entitled to absolute immunity from these claims.

First, we examine "the need to assure that the [Defendants] can perform [their] functions without harassment or intimidation." *Id.* Defendants are tasked under Texas law with comprehensively regulating the alcoholic beverage industry. *See* TEX. ALCO. BEV. CODE § 5.31.[3] TABC

---

[2] Spec's' allegations are not entirely clear about which individual Defendants were involved with each of the actions. Our holdings apply to each of the Defendants to the extent Spec's alleges their involvement in the actions discussed.

[3] This section provides in relevant part:

(a) The commission may exercise all powers, duties, and functions conferred by this code, and all powers incidental, necessary, or convenient to the administration of this code. It shall inspect, supervise, and regulate every phase of the business of manufacturing, importing, exporting, transporting, storing, selling, advertising, labeling, and distributing alcoholic beverages, and the possession of alcoholic beverages for the purpose of sale or otherwise. It may prescribe and publish rules necessary to carry out the provisions of this code.

(b) The commission shall:

officials must be allowed to "make these decisions free from the threat of incurring personal liability for every decision they" make. *Beck*, 204 F.3d at 636 (quoting *O'Neal*, 113 F.3d at 66). As evidenced by this case, the duties TABC performs, especially when bringing enforcement against potentially noncompliant businesses, are "likely to arouse the ire of targeted individuals." *Disraeli*, 489 F.3d at 632.

Second, we look for "the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct." *Id.* at 631. Spec's alleges that the combined SOAH proceedings included discovery, hearings, and written decisions—all characteristics of judicial proceedings. *See id.* at 633 (finding sufficient safeguards in, *inter alia*, requirements of a hearing, evidence, and written decision); *Beck*, 204 F.3d at 635 (looking to similar safeguards); *O'Neal*, 113 F.3d at 66 (same). Taking these allegations as true, we conclude that procedural safeguards were both available and applied in this case.

Third, we examine TABC's insulation from political influence. *Disraeli*, 489 F.3d at 631. Under Texas law, TABC is "composed of five members, who are appointed by the governor with the advice and consent of the senate." TEX. ALCO. BEV. CODE § 5.02. The members are appointed to staggered six-year terms, with terms expiring every two years. *Id.* § 5.03. Moreover, Texas law prohibits anyone "appointed to or serv[ing] on the commission, or hold[ing] an office under the commission, or . . . employed

---

(1) protect the public safety by deterring and detecting violations of this code;

(2) promote legal and responsible alcohol consumption;

(3) ensure fair competition within the alcoholic beverage industry;

(4) ensure consistent, predictable, and timely enforcement of this code;

(5) ensure a consistent, predictable, and timely licensing and permitting process;

(6) promote and foster voluntary compliance with this code; and

(7) communicate the requirements of this code clearly and consistently.

by the commission" from having "a financial interest in an alcoholic beverage business." TEX. ALCO. BEV. CODE § 5.05(a). Texas law also prohibits other entanglements with the alcoholic beverage industry. *See id.* § 5.05(c)–(d).[4] TABC officials and employees are thus generally free to resolve disputes without political pressure or industry influence. *See Beck*, 204 F.3d at 636; *O'Neal*, 113 F.3d at 66.

Fourth, we examine the importance of precedent. *Disraeli*, 489 F.3d at 631. Spec's makes no allegations or argument about whether TABC was bound by internal precedent. We therefore find "no reason . . . to conclude that [TABC] would be unlikely to follow its own precedent." *Id.* at 633; *see also Beck*, 204 F.3d at 636 (concluding "the absence of this factor is not dispositive" where "the record does not reveal whether the Board abided by internal precedent").

Fifth, we inquire into the adversarial nature of the process. *Disraeli*, 489 F.3d at 631. Spec's' complaint says nothing about the presence or absence of adversarial process respecting the holds, protests, or refusals to renew permits. As already noted, however, all these actions were combined with the existing SOAH proceedings "for purposes of discovery, hearing on the merits, and final decisions." Such proceedings are adversarial. *See* TEX.

---

[4] These sections provide, in full:

(c) A person may not be a member of the commission or act as the general counsel to the commission if the person is required to register as a lobbyist under Chapter 305, Government Code, because of the person's activities for compensation on behalf of a profession related to the operation of the commission.

(d) A person may not be a member of the commission and may not be a commission employee employed in a "bona fide executive, administrative, or professional capacity," as that phrase is used for purposes of establishing an exemption to the overtime provisions of the federal Fair Labor Standards Act of 1938 (29 U.S.C. Section 201 et seq.), if:

(1) the person is an officer, employee, or paid consultant of a Texas trade association in the field of alcoholic beverages; or

(2) the person's spouse is an officer, manager, or paid consultant of a Texas trade association in the field of alcoholic beverages.

ALCO. BEV. CODE § 5.43 (designating SOAH to conduct hearings); TEX. GOV'T CODE §§ 2001.081–.103 (providing rules for evidence, witnesses, and discovery in contested administrative cases); *see also Beck*, 204 F.3d at 636 (discussing adversarial aspects including representation by counsel, ability to present evidence, oaths, and evidentiary rulings). We are therefore satisfied that "the overall agency action" here was adversarial in nature. *Disraeli*, 489 F.3d at 633.

Lastly, we ask whether any errors were correctable on appeal. *Id.* at 631. Spec's' complaint says nothing about its appeal rights from the contested aspects of the administrative hearings. But we again emphasize that TABC's actions were combined with the underlying SOAH case and were reviewed on the merits. Thus, Spec's was free to—and did—challenge the grounds for the holds and protests before the ALJs. With the exception of a single credit law violation, Spec's prevailed in their challenge, and the ALJs also recommended that the protested permits be granted. Further, Spec's could appeal any denial of its applications to renew existing permits. *See* TEX. ALCO. BEV. CODE §§ 11.67(1), 61.34(a). Finally, under Texas law, "[a] person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review." TEX. GOV'T CODE § 2001.171. We are therefore persuaded that any errors in the process were remediable on appeal.

The *Butz* factors thus strongly suggest that Defendants' challenged conduct was akin to prosecutors intimately involved in judicial proceedings and therefore "entitled to absolute immunity from suit." *Disraeli*, 489 F.3d at 632. Defendants were discharging their statutory mandate to regulate the alcoholic beverage industry. The challenged acts—administrative holds, protests, and decisions regarding renewal permits—were related to, and arose out of the same alleged conduct as, the underlying SOAH case. This point is underscored by Spec's' allegations that the SOAH combined all the issues into a single consolidated case and that the bases for the underlying SOAH case and the protests were the same.

No. 19-20661

Spec's counters, in conclusory fashion, that the challenged acts were merely administrative and regulatory and thus disentitled to absolute immunity. It accuses the district court of failing to analyze the functions Defendants were performing. But Spec's' argument suffers from precisely that flaw: it offers virtually no functional analysis of Defendants' acts, beyond labeling them "administrative" and "regulatory."[5] That is insufficient.

For these reasons, we conclude that Defendants were functioning in quasi-prosecutorial roles as the State's advocate in a way "intimately associated with" judicial proceedings. *See Imbler*, 424 U.S. at 431; *Burns*, 500 U.S. at 486. Defendants are thus entitled to absolute immunity from the § 1983 claims concerning the acts challenged here.[6]

## C.

We disagree, however, with the district court's conclusion that Defendants are entitled to absolute immunity from Spec's' claim that they intentionally concealed information from a TABC auditor. Spec's alleges that Kennison "and other representatives of the TABC" concealed documents from Kathy Anderson, a TABC auditor, to obtain testimony from her that Spec's had violated the Texas Alcoholic Beverage Code. Kennison did this even though she knew the documents did not establish any violation by Spec's. TABC then used Anderson's testimony (1) as leverage to try and

---

[5] Spec's is mistaken that *State v. Bush*, 253 S.W. 2d 269 (Tex. 1952), supports its position. In that case, the Texas Supreme Court observed that liquor permitting is "merely the exercise of an administrative function" confided to certain officials, in the course of deciding that a county court at law had no jurisdiction to issue a new permit. *Id.* at 272. The decision says nothing about whether officials involved in permitting are entitled to absolute immunity.

[6] Our decision should not be read to conclusively settle the question of absolute immunity for any and all challenges to TABC actions during enforcement proceedings. Because we assume the truth of Spec's' pleadings, those pleadings, together with Spec's' arguments on appeal, compel the conclusions we reach today. As our discussion of the *Butz* factors suggests, absolute immunity in cases such as this turns on the specific facts of individual cases. *See Burns*, 500 U.S. at 487 (when determining whether absolute immunity applies, "it is important to determine the *precise* claim" a plaintiff makes about a defendant's role (emphasis added)).

No. 19-20661

force Spec's to pay a large sum to settle the investigation, and (2) as a basis for supplementing its allegations against Spec's in the SOAH proceedings. Spec's further alleges that "the TABC and their counsel" withheld information regarding applicable grace periods from Anderson to prompt her to incorrectly testify that the grace periods did not exist. TABC then attempted to use this incorrect testimony to leverage a settlement from Spec's.

These acts fall outside the scope of absolute immunity. "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley*, 509 U.S. at 273. But "non-testimonial pretrial actions, such as the fabrication of evidence, are not within the scope of absolute immunity because they are not part of the trial." *Castellano v. Fragozo*, 352 F.3d 939, 958 (5th Cir. 2003) (en banc).

Here, Spec's alleges that "Ms. Kennison (and other representatives of the TABC) concealed" relevant evidence from the TABC auditor, prompting her to give false testimony. The testimony was obtained during the investigation and was used as settlement leverage and as a basis for filing additional charges against Spec's in the SOAH proceeding. Defendants' alleged actions aimed to manipulate the ongoing investigation by creating evidence that could be used to obtain a favorable outcome—either a "win" in the SOAH proceedings or a significant settlement payment by Spec's. In essence, Defendants allegedly fabricated evidence, and we stated in *Fragozo* that such a claim does not fall within the scope of absolute immunity. *See id.* The district court erred by concluding otherwise.[7]

---

[7] To the extent Spec's claims Defendants elicited false testimony during the administrative proceedings, however, they are entitled to immunity. Those actions were part of the "trial," and Cherry was acting as "an advocate for the State." *See Buckley*, 509 U.S. at 273. But Spec's focuses on Defendants' manipulation of evidence before the SOAH proceedings were initiated, and those alleged acts fall outside the scope of absolute immunity.

10

In sum, the district court correctly concluded Defendants are entitled to absolute immunity from Spec's' claims that they wrongfully placed administrative holds and protested Spec's' applications and wrongfully refused to renew existing permits during the SOAH proceedings. However, contrary to the district court's conclusion, Defendants are not entitled to absolute immunity from Spec's' claims that, during the investigation, they concealed evidence from a TABC auditor in order to get false testimony to be used as settlement leverage and as an evidentiary basis for filing additional charges against Spec's in the SOAH proceeding.[8]

## IV.

The district court also held that sovereign immunity bars the § 1983 claims against Defendants in their official capacities. It further concluded that sovereign immunity barred Spec's' claims for injunctive and declaratory relief against Defendants because Spec's did not allege an ongoing injury, but instead sought rulings on "past alleged deficiencies." We agree and affirm.

## A.

Sovereign immunity generally "bars private suits against nonconsenting states in federal court." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). This immunity extends both to the state and to "agencies acting under its control." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). The Supreme Court's decision in *Ex parte Young*, 209 U.S. 123 (1908), established a narrow exception to that immunity for "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *City of Austin*, 943 F.3d at

---

[8] Defendants also contend that to the extent they are not entitled to absolute immunity, they are shielded by qualified immunity. The district court did not reach the issue because it concluded Defendants were entitled to absolute immunity. Presumably for that reason, Spec's does not address the question in its opening brief, and because it did not file a reply brief, we lack Spec's' arguments on the issue. We decline to address the question in the first instance. *See Humphries v. Elliott Co.*, 760 F.3d 414, 418 (5th Cir. 2014) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." (quoting *Singleton v. Wulff,* 428 U.S. 106, 120 (1976))). Defendants are free to raise the issue on remand.

997 (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013)). Determining if the exception applies involves "a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Off. for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (cleaned up) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

## B.

We agree with the district court that Spec's' § 1983 claim for damages against Adrian Nettles in his official capacity as Executive Director of TABC is barred by sovereign immunity. "Congress has not abrogated state sovereign immunity under . . . § 1983." *Raj*, 714 F.3d at 328. Spec's sued Nettles "Ex Officio," under "42 U.S.C. § 1983." Because state sovereign immunity has not been abrogated by § 1983, Spec's cannot bring a damages claim against Nettles in his official capacity. That claim was correctly dismissed.

We also agree with the district court that Spec's' claims for injunctive and declaratory relief are barred by sovereign immunity. Spec's seeks a declaration that Defendants violated its rights and that TABC's interpretations of various statutes and rules are incorrect. It also seeks an injunction prohibiting TABC and its officials from repeating the various acts Spec's alleges violated its rights. But Spec's does not allege that TABC or its officials are currently engaged in any of those behaviors or that any such actions are imminent. It is undisputed that the investigation and SOAH proceedings forming the basis of the allegations in this case are completed. The injunctive relief sought focuses on past behavior but does not allege an "ongoing violation of federal law." *See Stewart*, 563 U.S. at 255. Spec's has therefore failed to allege a claim that falls within the *Ex parte Young* exception, and its claims for injunctive and declaratory relief are barred by sovereign immunity. *See Williams*, 954 F.3d at 737 (*Young* exception "focuse[s] on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past"). We therefore affirm on this issue.

No. 19-20661

## V.

Spec's also sought a declaration that Texas Alcoholic Beverage Code § 102.07(a)(7) is a per se violation of the Sherman Act. It further alleged that Defendants violated the Sherman Act by placing holds on Spec's' applications, denying renewals during the SOAH proceedings, and seeking to cancel or suspend Spec's' existing permits. The district court concluded these antitrust claims were barred by the state-action doctrine. We agree.

## A.

The Sherman Act forbids unreasonable restraints of trade. *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283 (2018); *see* 15 U.S.C. § 1. However, in *Parker v. Brown*, 317 U.S. 341 (1943), the Supreme Court recognized that the Sherman Act was not intended "to restrain a state or its officers or agents from activities directed by its legislature." *Id.* at 350–51. Thus, "exercise[s] of the State's sovereign power" are immune from antitrust scrutiny, and "[s]tate legislation and decisions of a state supreme court, acting legislatively rather than judicially . . . *ipso facto* are exempt from the operation of the antitrust laws." *N. Carolina State Bd. of Dental Examiners v. F.T.C.*, 574 U.S. 494, 504 (2015) [hereinafter *Dental Examiners*] (cleaned up).

For acts that are not clearly exercises of state sovereign power, the Court has established two requirements relevant to state-action immunity. *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980). "First, the challenged restraint must be one clearly articulated and affirmatively expressed as state policy; second, the policy must be actively supervised by the State itself." *Id.* (internal quotation marks omitted). These dual requirements are known as the "*Midcal* test."

However, "[s]ome defendants are not subject to both prongs of *Midcal* review." *Earles v. State Bd. of Certified Pub. Accountants of La.*, 139 F.3d 1033, 1040 (5th Cir. 1998). For example, in *Town of Hallie v. City of Eau Claire*, 471 U.S. 34 (1985), the Supreme Court held that municipalities are not subject to the "active supervision" requirement. *Id.* at 46–47. The Court also observed that "[i]n cases in which the actor is a state agency, it is likely that active state supervision would also not be required." *Id.* at 46 n.10. We subsequently held

in two cases that the state or public agency at issue was not subject to the "active supervision" requirement. *See Green v. State Bar*, 27 F.3d 1083, 1087 (5th Cir. 1994); *Benton, Benton & Benton v. La. Pub. Facilities Auth.*, 897 F.2d 198, 203 (5th Cir. 1990).

The Supreme Court's most recent statement of the state-action immunity test is *Dental Examiners*, which applied both *Midcal* prongs to a state board of dental examiners, the majority of which were required to be practicing dentists. 574 U.S. at 500, 504–06. In applying both prongs, the Court emphasized that the state had "delegate[d] control over a market to a nonsovereign actor." *Id.* at 505. "State agencies," the Court explained, "are not simply by their governmental character sovereign actors for purposes of state-action immunity." *Id.* To qualify, the agency must have "more than a mere facade of state involvement" because the rationale underlying state action immunity requires "the states [to] accept political accountability for anticompetitive conduct they permit and control." *Id.*

Thus, as summarized by one of our sister circuits, there are basically "three approaches to analyzing a state-action defense." *Edinboro College Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 572 (3d Cir. 2017). First, true state action is *ipso facto* exempt from antitrust scrutiny. *Dental Examiners*, 574 U.S. at 504; *Hoover v. Ronwin*, 466 U.S. 558, 568 (1984) ("Where the conduct at issue is in fact that of the state legislature or supreme court, we need not address the issues of 'clear articulation' and 'active supervision.'"). Second, acts by a typical state agency or municipality are entitled to state-action immunity if "the conduct is pursuant to a 'clearly articulated and affirmatively expressed state policy' to replace competition with regulation." *Hoover*, 466 U.S. at 568–69 (quoting *Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40, 54 (1982)); *see also Town of Hallie*, 471 U.S. at 46–47. Third, for acts by private parties, or by state "agencies" composed of individuals who participate in the market they regulate, we apply both *Midcal* requirements—we ask both whether the acts were taken pursuant to a clearly articulated state policy *and* whether the acts were supervised by the state. *See Dental Examiners*, 574 U.S. at 506; *see also Veritext Corp. v. Bonin*, 901 F.3d

287, 292–93 (5th Cir. 2018) (applying both *Midcal* prongs where regulatory board consisted of market participants).

We apply this state-action framework to Spec's' Sherman Act claims.

## B.

Spec's first argues that Texas Alcoholic Beverage Code § 102.07(a)(7) is a per se violation of the Sherman Act. Section 102.07(a)(7) provides that "no person who owns or has an interest in the business of a distiller, brewer, rectifier, wholesaler, class B wholesaler, winery, or wine bottler, nor the agent, servant, or employee of such a person, may . . . allow an excessive discount to a retailer . . . ." *Id.* Spec's contends that "any ban on liquor or wine discounts is a 'hybrid restraint' of trade, which is a *per se* violation of [S]ection 1 of the Sherman Antitrust Act." We disagree. Section 102.07(a)(7) was duly enacted by the Texas Legislature. As "[s]tate legislation," it "*ipso facto* [is] exempt from the operation of the antitrust laws because [it is] an undoubted exercise of state sovereign authority." *Dental Examiners*, 574 U.S. at 504 (cleaned up). The district court thus correctly dismissed this claim.[9]

## C.

Spec's next contends that Defendants violated the Sherman Act by placing holds on Spec's' applications, denying renewals during the SOAH proceedings, and seeking to cancel or suspend Spec's' existing permits. We disagree. Each of these acts qualifies for state-action immunity.

First, the challenged acts are subject to only *Midcal*'s "clear articulation" prong. There are no allegations that Defendants are nonsovereign actors regulating markets in which they participate. As we have already observed, Texas law prohibits TABC officials and employees from

---

[9] Contrary to Spec's' contentions, section 102.07(a)(7) does not present a situation where the government delegated regulatory power to a private party, and thus the provision does not qualify as a "hybrid restraint." *See Xcaliber Int'l Ltd. v. Caldwell*, 612 F.3d 368, 376–77 (5th Cir. 2010). For that reason, its reliance on the Fourth Circuit's decision in *TFWS, Inc. v. Schaefer*, 242 F.3d 198 (4th Cir. 2001), is inapposite.

having financial interests in the industry they regulate. *See* TEX. ALCO. BEV. CODE §§ 5.05(a); (c)–(d). TABC is not a state entity run by private actors who participate in the regulated market. Thus, we need not apply both *Midcal* prongs. *Cf. Dental Examiners*, 574 U.S. at 506; *Veritext*, 901 F.3d at 292–93.

The dispositive question is whether the challenged acts were "affirmatively expressed as state policy." *Midcal*, 445 U.S. at 105 (quoting *City of Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 410 (1978)). "*Midcal*'s clear articulation requirement is satisfied where the displacement of competition is the inherent, logical, or ordinary result of the exercise of authority delegated by the state legislature." *Dental Examiners*, 574 U.S. at 506–07 (cleaned up) (quoting *F.T.C. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 229 (2013)).

That standard is met here. The Texas Alcoholic Beverage Code vests TABC with comprehensive regulatory authority. *See* TEX. ALCO. BEV. CODE § 5.31(a). Importantly, "[t]he commission shall . . . *ensure fair competition* within the alcoholic beverage industry." *Id.* (b)(3) (emphasis added). The challenged actions are an "inherent, logical, or ordinary result" of TABC's mandate to comprehensively regulate the alcoholic beverage industry, and of its specific mission to regulate competition in that industry. "[T]he statutes clearly contemplate that [TABC might] engage in anticompetitive conduct." *See Town of Hallie*, 471 U.S. at 42. Consequently, the acts Spec's complains of were taken pursuant to a "clearly articulated and affirmatively expressed . . . state policy." *Midcal*, 445 U.S. at 105. State-action immunity attaches.

## VI.

Finally, Spec's challenges the district court's decision to decline supplemental jurisdiction over its remaining state-law malicious prosecution claim. The district court did so after dismissing all of Spec's' federal claims. "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Because Defendants are not absolutely immune from all of Spec's' federal law claims, *supra* Part III(C), the grounds on which the district court declined to exercise supplemental

No. 19-20661

jurisdiction over the state-law claim are no longer present. We therefore vacate the portion of the district court's decision declining to exercise supplemental jurisdiction.

* * *

The district court correctly determined that Defendants are entitled to absolute immunity from Spec's' § 1983 claims regarding administrative holds, protests of applications, and denials of renewals. It erred by concluding Defendants are absolutely immune from Spec's' § 1983 individual-capacity claim regarding the concealment of evidence. The district court correctly determined that sovereign immunity bars Spec's' official-capacity claims for damages and for injunctive and declaratory relief. It correctly held that Defendants are entitled to state-action immunity from Spec's' antitrust claims, and that Texas Alcoholic Beverage Code § 102.07(a)(7) is not a per se violation of the Sherman Act. Finally, the district court's decision to decline supplemental jurisdiction over Spec's' state-law malicious prosecution claim must be vacated because the grounds for that decision are no longer applicable.

AFFIRMED in part; REVERSED in part; VACATED in part; REMANDED for further proceedings consistent with this opinion.