United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 28, 2004**

Charles R. Fulbruge III
Clerk

H IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 03-11229

---

LORETTA ANDERSON

Plaintiff - Appellant

v.

CITY OF DALLAS, doing business as Communication and
Information Services Department; MARY K SUHM, Individually;
CHARLES W DANIELS, Individually; RYAN S EVANS, Individually;
BRUCE MEEKS, Individually; MICHAEL PUENTE, Individually; JASON
MCCLAIN, Individually; MELVYN BERKE, Officially and Individually;
MADOKA ARMSTRONG, Officially and Individually

Defendants - Appellees

---

Appeals from the United States District Court for the
Northern District of Texas, Dallas

---

Before KING, Chief Judge, and HIGGINBOTHAM and DAVIS, Circuit
Judges.

PER CURIAM:[*]

Loretta Anderson, acting pro se, filed suit against the City

of Dallas and eight individual defendants after the City of

Dallas terminated her employment in June 2000.  In her lawsuit,

Anderson alleged numerous federal and state law claims, including

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

racial discrimination, sex discrimination, age discrimination, disability discrimination, retaliation, defamation, invasion of privacy, violations of her equal protection and due process rights, and conspiracy.  The district court subsequently granted motions to dismiss and for summary judgment in favor of the defendants and entered final judgment.  Anderson now alleges that the district court erred when it granted these motions.  For the following reasons, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises out of events leading up to and including the termination of Loretta Anderson's employment with the City of Dallas (the "City") on June 27, 2000.  Prior to her termination, Anderson, an African-American female, worked as a shift supervisor in the City's Communication and Information Services ("CIS") department.  At the time of her termination, she had worked in the CIS department for sixteen of her twenty-nine years with the City.

On March 17, 2000, Bruce Meeks, the Assistant Director of CIS-Information Services for the City, placed Anderson on administrative leave because of concerns about her fitness for duty.  On March 21, 2000, Michael Puente, Anderson's direct supervisor, instructed her to report to Dr. Melvin Berke, a psychologist working with the Holiner Psychiatric Group, for a fitness for duty exam.  Anderson reported to Dr. Berke on March 23, 2000 and completed an MMPI evaluation.  However, she refused

2

to sign a "clean" medical release form, instead writing on the release form that she had been ordered by her employer to undergo the examination and to permit the release of her records. As a result, Dr. Berke would not release information about her exam to the City. This refusal by Anderson to sign a clean medical release form began a lengthy chain of events involving her refusal to sign other clean release forms--a chain of events that ultimately lead to her discharge.

On May 1, 2000, approximately one month after Anderson first refused to sign a clean medical release form, Bruce Meeks issued a Direct Order to her instructing her to report for a fitness for duty evaluation and to sign, without alteration, any necessary medical release forms. Four days later, on May 5, 2000, Meeks sent Anderson a letter explaining why she was referred for a fitness for duty evaluation. He also issued that same day another Direct Order instructing her to report for a fitness for duty examination and to sign, without alteration, any necessary medical release forms.

On May 8, 2000, Anderson signed a form releasing confidential information from the Holiner Psychiatric Group. However, she wrote on the authorization form, "Order from my Dept ECI (Meeks)." That same day, she signed another version of this same form (releasing information from the Holiner Psychiatric Group), but wrote "2 attach" next to her signature and attached to it the May 5, 2000 letter and memorandum from the City to her.

3

Similarly, on May 15, 2000, she reported for another appointment with a physician as part of her fitness for duty exam. At this appointment, she wrote "order attached" to the right of her signature on her insurance consent form. Additionally, she signed a medical release authorization form, but crossed out the word "patient," failed to fill it out completely, and wrote "order attached" to the right of her signature. As a result, the physician conducting the examination would not release Anderson's records to the City or to the psychologist who was evaluating her.

On June 12, 2000, the City sent Anderson a pre-termination letter stating that, as a result of her refusal to sign clean consent forms, disciplinary action, up to and possibly including termination, was possible. On June 27, 2000, the City held a pre-termination hearing. Defendants Suhm, Daniels, Evans, and McClain constituted the hearing panel. Following the hearing, Bruce Meeks sent Anderson a termination letter stating that she was being terminated for violating personnel rules. Subsequently, Anderson filed a grievance challenging her termination, and she was granted a grievance hearing. Dr. Berke, among others, testified at this hearing. The hearing did not, however, lead to Anderson's reinstatement.

On January 28, 2000, before being terminated, Anderson filed a charge of discrimination against the City with the Equal Employment Opportunity Commission ("EEOC"), in which she alleged

4

retaliation and racial discrimination. On February 3, 2000, Anderson received a right to sue notice on this charge of discrimination. On February 1, 2001, Anderson filed another charge of discrimination against the City, in which she alleged retaliation and disability discrimination. Anderson received a right to sue letter on this charge on February 7, 2001.

On May 7, 2001, Anderson, acting pro se, filed the present lawsuit, alleging that she was retaliated against and that the defendants discriminated against her on the basis of her race, sex, age, and disability. She also claimed that the defendants violated 42 U.S.C. §§ 1983, 1985(2), 1985(3), and her due process rights by ordering her to sign medical releases and by disciplining her. Finally, she asserted libel, slander, and invasion of privacy claims under Texas law.

On September 18, 2001, the district court granted a motion to dismiss filed by Dr. Berke, thereby dismissing all claims against him. The district court simultaneously dismissed all of Anderson's claims arising under 42 U.S.C. § 1985 against Madoka Armstrong, a nurse practitioner with the Holiner Psychiatric Group. Subsequently, on July 17, 2003, the district court granted a motion for summary judgment filed by the City, Suhm, Daniels, Evans, Meeks, Puente, and McClain. The district court then dismissed without prejudice Anderson's remaining state-law claims and entered final judgment.

On November 12, 2003, Anderson filed a Notice of Appeal. On

5

appeal, Anderson challenges the district court's decision to dismiss her claims against Dr. Berke. She also appeals most, though not all, aspects of the district court's decision granting the defendants' motion for summary judgment.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, applying the same standard as the district court. See Fierros v. Tex. Dep't. of Health, 274 F.3d 187, 190 (5th Cir. 2001). According to the Supreme Court, "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(C)). The party moving for summary judgment "must merely demonstrate an absence of evidentiary support in the record for the non-movant's case." Byers v. Dallas Morning News, Inc., 209 F.3d 419, 424 (5th Cir. 2000). Conversely, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (holding that no issue for trial exists unless there is sufficient evidence for a jury to return a verdict for the nonmoving party). When a district court reviews the support for a nonmovant's case, the "evidence of the non-movant is to be

6

believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255.

Similarly, this court reviews de novo a district court's dismissal pursuant to FED. R. CIV. P. 12(b)(6). Walker v. South Cent. Bell Tel. Co., 904 F.2d 275, 276 (5th Cir. 1990). In so doing, this court considers all facts in the light most favorable to the non-moving party. Id. A dismissal was proper if the plaintiff's allegations were merely conclusory or if "the complaint lacks an allegation regarding a required element necessary to obtain relief." Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995) (internal quotation marks omitted).

When a plaintiff is proceeding pro se, the court holds her pleadings to a less stringent standard than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972). Likewise, this court considers pro se complaints liberally, taking all well-pleaded facts as true. Brinkmann v. Johnston, 793 F.2d 111, 112 (5th Cir. 1986).

### III. DISCUSSION

Anderson argues that the district court erred when it granted summary judgment regarding her: (1) Title VII claims (sex discrimination, age discrimination, race discrimination, and retaliation); (2) ADA claims; (3) defamation and invasion of privacy claims; (4) equal protection claims; (5) due process claims; and (6) § 1985(3) claims. She also argues that the district court improperly dismissed her claims against Dr. Berke.

7

We examine each of these claims in turn.

A.    Title VII Claims

1.    Sex and Age Discrimination

Anderson begins by arguing that the district court improperly granted summary judgment in favor of the defendants on her sex and age discrimination claims brought under Title VII. According to Anderson, the district court erred when it found that she had not exhausted her administrative remedies with respect to these claims.  Anderson contends that she discussed sex and age discrimination with the EEOC in connection with her January 28, 2000 charge of discrimination but that EEOC representatives chose not to mark the boxes for sex and age discrimination on her charge.  She also claims that this charge of discrimination referenced other charges previously filed by her--charges that explicitly raised sex and age discrimination claims.   Anderson's sex and age discrimination claims fail because she did not exhaust her administrative remedies with respect to them.  In this circuit, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC prior to seeking judicial relief. <u>Dollis v. Rubin</u>, 77 F.3d 777, 780 (5th Cir. 1995).  Anderson, however, provided the district court with no evidence that she filed a sex or age discrimination complaint with the EEOC before filing suit.  The January 28, 2000 charge of discrimination upon which she relies does not mention these types of discrimination--instead, it

8

alleges racial discrimination and retaliation. While it does mention that Anderson previously filed other charges of discrimination, the January 28, 2000 charge does not state what these prior charges were about; it only references them as possible evidence of retaliation. Moreover, while Anderson implies that the EEOC did not include all of her complaints in the January 28, 2000 charge, Anderson herself signed the charge and did not file another charge alleging age or sex discrimination, as she could have done. Accordingly, because Anderson failed to exhaust her administrative remedies with respect to her sex and age discrimination claims, the district court properly granted summary judgment in favor of the defendants on them.

### 2. Retaliation

Anderson next argues that the district court improperly granted summary judgment in favor of the defendants on her various retaliation claims. In her amended complaint, she alleged thirteen different retaliatory acts against her. First, she claimed that she was retaliated against on April 19, 1999 and May 18, 1999 when she was reprimanded and suspended. She included these claims, along with a claim of racial discrimination claims, in her January 28, 2000 charge of discrimination. In her appeal, Anderson admits that on February 3, 2000, she received a right to sue letter pertaining to this charge of discrimination. She claims that she did not file suit

9

on this charge of discrimination until March 7, 2001 because she was confined to her residence from March 18, 2000 until June 27, 2000 and because she was ordered not to enter City property while on administrative leave.  Additionally, she cites <u>Waltman v. International Paper Co.</u>, 875 F.2d 468, 474 (5th Cir. 1989), and <u>Glass v. Petro-Tex Chemical Corp.</u>, 757 F.2d 1554, 1561 (5th Cir. 1985), for the proposition that an equitable exception to the limitations period exists when an unlawful employment practice manifests itself over time.  She claims that even if certain of her retaliation claims are time-barred, the district court still should have allowed her to proceed under this equitable exception.

Anderson next claims that the district court improperly granted summary judgment against her with respect to two of her other retaliation claims--claims pertaining to suspensions by the City on February 20, 2000 and March 17, 2000.  In support of this claim, she states that the district court erred when it found that she had not filed a timely charge of discrimination with the EEOC regarding these suspensions.  According to Anderson, she filed a charge of discrimination on February 1, 2001, which pertained to her termination on June 27, 2000.  She appears to imply that since the February 20, 2000 and March 17, 2000 suspensions were related to her termination, and since the charge of discrimination regarding her termination was timely, her claims regarding these suspensions were also timely.

10

Anderson further contends that the district court incorrectly granted summary judgment in favor of the defendants on her remaining retaliation claims on the basis that she did not establish a prima facie case of retaliation. According to Anderson, she established her prima facie case. In support of this claim, she states that the City had no lawful reason for ordering her to undergo a fitness for duty exam, could not show that she committed any rules violations justifying her placement on administrative leave, and could not prove that she presented a threat or was violent. She also contends that she went to all of her medical appointments, signed all forms she was ordered to sign, and never improperly modified or altered medical release forms in violation of the May 5, 2000 Direct Order. Thus, she concludes that the City acted maliciously and in bad faith when it took action against her.

Finally, Anderson contends that, contrary to the district court's findings, the City's allegedly legitimate nondiscriminatory reason for terminating her (i.e., that she repeatedly refused to obey her superiors' orders) was pretextual. According to Anderson, she completed the fitness for duty exam and signed all medical release forms that she was asked to sign. Furthermore, she argues that the district court was incorrect when it found that Bruce Meeks, the individual who terminated her, did not know about her protected activities when he terminated her. In support of this claim, she states that on

February 25, 2000, she sent a letter to Meeks, in which she complained about unfavorable employment actions taken against her. Additionally, she notes that Meeks was the supervisor of Michael Puente--the individual who initially decided to have her take a fitness for duty exam--and therefore must have known about grievances she had previously filed. Thus, she concludes that the district court erred when it found that the City had a legitimate nondiscriminatory reason for terminating her.

The court begins with Anderson's argument about the timeliness of the claims raised in her January 28, 2000 charge of discrimination. On February 3, 2000, the EEOC provided Anderson with a right to sue letter pertaining to this charge. A plaintiff alleging discrimination under Title VII must file a lawsuit within ninety days of receiving a right to sue letter. 42 U.S.C. § 2000e-5(f)(1) (2000); Ringgold v. Nat. Maint. Corp., 796 F.2d 769, 770 (5th Cir. 1986); Butler v. Orleans Parish Sch. Bd., 2001 WL 1135616 (E.D. La. Sept. 25, 2001) (dismissing a Title VII claim where a pro se Appellant filed her complaint one day beyond the ninety-day period because of family illnesses). Anderson, however, did not file suit on the claims contained in her January 28, 2000 charge of discrimination until March 7, 2001, well after the ninety-day period had expired. While Anderson suggests that she could not file suit during this period because she was confined to her residence between March 7, 2000 and June 27, 2000, she does not explain this claim or offer any

evidence in support of it.  Similarly, she does not explain how being barred from city property while on administrative leave prevented her from filing suit in federal court.  As for Anderson's invocation of <u>Waltman</u> and <u>Glass</u> to save her otherwise time-barred claims, these cases provide for an equitable exception to the limitations period when a plaintiff was unaware of discriminatory conduct that was part of a pattern of discrimination.  <u>See</u> <u>Glass</u>, 757 F.2d at 1560-61 (holding that "[e]quitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated" and that "[t]he focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights." (internal quotations marks omitted)).  Anderson has put forward no evidence of any alleged discriminatory conduct of which she was unaware.  Accordingly, the equitable principles of <u>Waltman</u> and <u>Glass</u> do not save her otherwise time-barred claims based on the January 28, 2000 charge of discrimination, and the district court properly granted summary judgment on them.

The court next turns to Anderson's claim that the district court improperly granted summary judgment on her retaliation claims pertaining to her February 20, 2000 and March 17, 2000 suspensions.  An individual alleging discrimination under Title VII must file a charge of discrimination with the EEOC within 300

13

days of learning of the allegedly adverse employment action. Washington v. Patlis, 868 F.2d 172, 175 (5th Cir. 1989). However, as the district court correctly noted, Anderson did not file a charge with the EEOC regarding these suspensions until February 1, 2001, more than 300 days after she received notice of them. Anderson does not dispute this fact, nor does she discuss the 300-day limitations period in her appellate brief. Instead, she says that these suspensions were related to her termination, and she implies that her claims regarding them are timely since she filed a charge of discrimination within 300 days of being terminated. She does not, however, provide any case law supporting this claim, and none exists. Regardless of whether Anderson filed a timely charge of discrimination regarding her termination, she clearly did not file a timely charge regarding the February 20, 2000 and March 17, 2000 suspensions. Accordingly, the district court correctly granted summary judgment in favor of the defendants on these claims.

Finally, Anderson's remaining retaliation claims fail because she has not established a prima facie case regarding them. To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal connection existed between the adverse action and the protected activity. Jones v. Flagship Int'l, 793 F.2d 714, 724-25 (5th Cir. 1986). In this circuit, an adverse employment

14

action is an "ultimate employment decision," such as being fired, hired, discharged, promoted, compensated, or granted leave. Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997), cert. denied, 522 U.S. 932 (1997).  Anderson alleges that she was retaliated against by being terminated, forced to undergo a fitness for duty evaluation, forced to sign a medical release form, classified as a danger, and classified as a "no rehire" with a poor performance rating.  With the exception of being terminated, none of these activities constitutes an ultimate employment action and, accordingly, these claims fail.  With respect to Anderson's termination, she did not argue below that Bruce Meeks, the individual who decided to terminate her, knew that she had engaged in any protected activities when he terminated her.  Accordingly, the district court properly granted summary judgment on this basis.  See Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 267 (5th Cir. 1994).  Moreover, even if Anderson had established a prima facie case of retaliation-- something she did not do--her retaliation claims pertaining to her termination still fail because, as the district court correctly found, she never rebutted the City's proffered nondiscriminatory reason for terminating her.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 806 (1973). According to the City, Anderson repeatedly disobeyed her superiors' Direct Orders, and she refused to sign clean release forms.  While Anderson tried to justify her behavior regarding the release

15

forms in her response to the City's motion for summary judgment, the evidence clearly shows that she consistently refused to sign clean release forms as she was ordered to do. Accordingly, Anderson has offered no evidence whatsoever that the City's reason for terminating her was pretextual, and the district court properly granted summary judgment for the defendants on her remaining retaliation claims.

B. ADA Claims

Anderson next claims that the district court erred by granting summary judgment in favor of the defendants on her claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2) (2000). According to Anderson, she suffered a fall on the job on May 3, 1999 and, as a result, was placed on limited physical duty from July 1999 until October 1999. On January 24, 2000, her physician released her to regular duty. Accordingly, Anderson claims that she was substantially limited in a major life activity between May 3, 1999 and January 24, 2000. She argues, therefore, that the district court erred when it found that she was not disabled and granted summary judgment for the defendants on her ADA claims.

Anderson's ADA claims fail because she has not established that she was disabled. In order to prove a prima facie case of discrimination under the ADA, a plaintiff must show that: (1) she is disabled; (2) she was qualified for the job in question; and (3) an adverse employment action was taken because of her

16

disability.  Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1024 (5th Cir. 1999).  A plaintiff is disabled under the ADA when she is substantially limited in the performance of a major life activity.  Rogers v. Int. Marine Terminals, Inc., 87 F.3d 755, 758 (5th Cir. 1996).  "Major life activities" are things such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 280 (5th Cir. 2000) (citing 29 C.F.R. § 1630.2).  Anderson has offered no evidence that she was ever substantially limited in the performance of any of these major life activities.  She merely claims that she was placed on limited duty for a short period of time as the result of her fall.  With respect to this claim, the Supreme Court has held that an "impairment's impact must . . . be permanent or long-term" to qualify as a disability.  Toyota Motor Mfg., Ky. v. Williams, 534 U.S. 184, 198 (2002).  Moreover, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i); Deas v. River West, L.P., 152 F.3d 471, 481 (5th Cir. 1998), cert. denied, 527 U.S. 1035 (1999). Likewise, this court has held that "[a]n employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general."  Chandler v. City of Dallas, 2 F.3d 1385, 1390

17

(5th Cir. 1993); see also Bridges v. City of Bossier, 92 F.3d 329, 332 (5th Cir. 1996), cert. denied, 519 U.S. 1093 (1997). Accordingly, the fact that Anderson was on limited duty for a short period of time is not enough for her to qualify as a disabled individual under the ADA. Since she has offered no other evidence that she was substantially limited in a major life activity, her ADA claims fail.

Moreover, even if Anderson was substantially limited in a major life activity, her ADA claims would still fail because, as discussed previously, the City proffered a legitimate nondiscriminatory reason for terminating her, and Anderson has offered no evidence that this reason was pretextual. As such, the district court properly granted summary judgment on Anderson's ADA claims.

C. Defamation and Invasion of Privacy Claims

Anderson next contends that the district court improperly granted summary judgment for the defendants on her defamation (slander) claims against them. In support of this claim, she first argues that the City is not immune from her tort claims under the doctrine of sovereign immunity. Her arguments on this topic are copied verbatim from her original response to the City's motion for summary judgment. She argues, inter alia, that she has alleged a violation of a constitutional right, and she claims that under the Texas Tort Claims Act, sovereign immunity is waived when an injury is caused by a condition or use of

18

tangible personal property. She then concludes that the City is not immune from her tort claims because she had a property interest in her employment.

Second, Anderson argues that her defamation claims against defendants McCain, Puente and Meeks are not barred by the doctrine of quasi-judicial immunity. She claims, inter alia, that judges and other public servants can be held liable for tortiously injuring other citizens by acting in violation of specific constitutional provisions. She then notes that the City convened a threat assessment meeting regarding her on March 16, 2000, at which members of the committee stated that Anderson was a threat. Based on these statements, she concludes that certain city employees defamed her and engaged in a conspiracy to deprive her of her constitutional rights.

Finally, Anderson argues that her invasion of privacy claim against Meeks is not barred by official immunity because, inter alia, he acted in bad faith by requiring her to submit to an involuntary fitness for duty exam.

The court first turns to Anderson's claim that the City is not immune from her torts claims because she had a property interest in her employment. Anderson is correct that under the Texas Tort Claims Act, sovereign immunity is waived for "injury caused by a condition or use of tangible personal or real property." Medrano v. City of Pearsall, 989 S.W.2d 141, 144 (Tex. App.--San Antonio 1991, no pet.). "Tangible property,"

19

however, is defined as "property that is capable of being handled, touched, or seen." Birdo v. Williams, 859 S.W.2d 571, 573 (Tex. App.--Houston 1993, no writ); see also Thomas v. Brown, 927 S.W.2d 122, 128 (Tex. App.--Houston [14th Dist.] 1996, writ denied) ("Tangible personal property refers to something that has a corporeal, concrete, and palpable existence."). Anderson's employment is not corporeal, concrete property of this sort. Accordingly, the City's sovereign immunity is not waived with respect to Anderson's tort claims, and the City is entitled to summary judgment on them.

With respect to Anderson's defamation (slander) claims against McClain, Puente and Meeks, Anderson has pointed to no specific statements about her made by them during the March 16, 2000 threat assessment meeting. Similarly, while Anderson vaguely alludes to a conspiracy to deprive her of unspecified constitutional rights, she points to no statements that McClain, Puente, or Meeks made in furtherance of this conspiracy. Moreover, as the City correctly notes in its response, Anderson only alleged in her amended complaint that McClain, Puente, and Meeks defamed her during the July 27, 2000 pre-termination hearing. As to this claim, McClain, Puente, and Meeks's participation in this administrative hearing was quasi-judicial in nature. See Butz v. Economou, 438 U.S. 478, 511-17 (1978); O'Neal v. Miss. Bd. of Nursing, 113 F.3d 62, 65, 67 (5th Cir. 1997). Accordingly, they are entitled to quasi-judicial immunity

20

with respect to their activities at this administrative hearing, and the district court properly granted summary judgment in their favor on this claim.

Finally, as for Anderson's invasion of privacy claim against Meeks, the doctrine of official immunity protects government officials in Texas from suit for acts done in good faith as part of their official duties. See City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994). Likewise, the Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Anderson cites no evidence or authority for her claim that Meeks violated a clearly established statutory or constitutional right of hers, nor has she offered any evidence that he acted in bad faith. Accordingly, the district court properly granted summary judgment in his favor on this claim.

D.    Equal Protection Claims

Anderson next alleges that the district court improperly granted summary judgment in favor of the City on her equal protection claim against it under 42 U.S.C. § 1983. Anderson appears to base this argument on her contention that she had a property interest in her continued employment with the City--an interest that it infringed when it fired her. Anderson also

21

argues that Suhm, Daniels, and Evans violated her equal protection rights by refusing to allow her to present fully her side of the story at administrative hearings and by arbitrarily and capriciously dismissing her grievances.

A municipality like the City cannot be held liable under 42 U.S.C. § 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). In this circuit, an official municipal policy is "[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." Evans v. City of Houston, 246 F.3d 344, 358 (5th Cir. 2001) (alteration in original) (quoting Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)). As the district court correctly noted, Anderson has not pointed to any policy of the City that led to a violation of her rights. Accordingly, the district court properly granted summary judgment in favor of the City on her equal protection claim against it.

With respect to Anderson's claim that Suhm, Evans, and Daniels violated her equal protection rights during administrative hearings, these individuals' actions occurred during hearings where witnesses were called, evidence was presented, and findings of fact were made. Accordingly, their actions were quasi-judicial in nature, they are entitled to

22

quasi-judicial immunity, and the district court properly granted summary judgment in their favor on these claims.  See Butz, 438 U.S. at 511-17; O'Neal, 113 F.3d at 65, 67.

E.    Due Process Claims

Anderson next argues that the district court improperly granted summary judgment in favor of the defendants on her due process claims under 42 U.S.C. § 1983.  First, she contends that the City should be held liable for violating her due process rights under the theory of respondeat superior.  In support of this claim, she states, inter alia, that city employees improperly reprimanded and suspended her.  She also contends that the City acted arbitrarily and capriciously, intentionally harmed her, and discriminatorily placed her on leave.  Second, Anderson argues that Suhm, Evans, Daniels, and McClaim are not entitled to quasi-judicial immunity with respect to her due process claims against them since they permitted the City to illegally terminate her.  Finally, she argues that Meeks is not entitled to qualified immunity as to her due process claim against him because he knew or should have known that certain communications he sent (e.g., a letter he faxed to the Holiner Psychiatric Group in March 2000) contained false information.

A municipality like the City cannot be held liable for violating Anderson's due process rights under the theory of respondeat superior.  As previously discussed, a municipality like the City can only be held liable under 42 U.S.C. § 1983 if a

23

municipal policy or custom caused a constitutional tort.  <u>Monell</u>,
436 U.S. at 691.  Since Anderson does not point to any policy of
the City that led to a violation of her due process rights, the
district court properly granted summary judgment in favor of the
City on this claim.

As for whether Suhm, Evans, Daniels, and McClain are
entitled to quasi-judicial immunity for their actions at
administrative hearings, their actions in these proceedings were
quasi-judicial in nature.  Hence, they are entitled to quasi-
judicial immunity, and summary judgment was properly granted in
their favor as to Anderson's due process claims against them.
See <u>Butz</u>, 438 U.S. at 511-17; <u>O'Neal</u>, 113 F.3d at 65, 67.

Finally, Anderson has offered no evidence that Meeks
violated her due process rights, nor has she offered any evidence
that he acted in bad faith.  Thus, for the reasons discussed
previously, he is entitled to qualified immunity, and summary
judgment in his favor on her due process claim against him was
appropriate.  <u>See</u> <u>Harlow</u>, 457 U.S. at 818; <u>Chambers</u>, 883 S.W.2d
at 653.

F.    <u>Section 1985(3) Claim</u>

Anderson next argues that the district court improperly
granted summary judgment in favor of the City on her
§ 1985(3) claim against it.[12]  In a one-paragraph argument in

---

[1]     Below, Anderson pursued claims against the City, Dr.
Berke, and Madoka Armstrong under 42 U.S.C. § 1985(3).

24

support of this contention, she repeats her claim that the City, inter alia, acted arbitrarily and capriciously, intentionally harmed her, deprived her of her privacy rights, violated her equal protection rights, and discriminatorily placed her on leave.

In order to establish a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy between two or more individuals; (2) for the purpose of depriving a person or class of people of the equal protection of the laws or of equal privileges and immunities under the laws; and (3) an act committed in furtherance of the conspiracy that injures a person or deprives him of a right or privilege of a citizen of the United States. See Deubert v. Gulf Fed. Savings Bank, 820 F.2d 754, 757 (5th Cir. 1987). Furthermore, the only type of conspiracy actionable under § 1985(3) is one motivated by racial animus. Id.; Daigle v. Gulf States Utils. Co., 794 F.2d 974, 979-80 (5th Cir. 1986). In the present case, Anderson presented the district court with no evidence whatsoever of a race-based conspiracy, discriminatory intent, or an act committed in

---

Similarly, she pursued claims against certain defendants under 42 U.S.C. § 1985(2). She does not, however, appeal the district court's dismissal of her § 1985 claims against Berke and Armstrong, nor does she appeal its decision granting summary judgment against her on her § 1985(2) claims. Hence, this court will not examine her § 1985(2) claims, nor will it examine her § 1985(3) claims against any party other than the City.

furtherance of a conspiracy. Accordingly, the district court properly granted summary judgment in favor of the City on this claim.

### G. Dr. Berke's Motion to Dismiss

Finally, Anderson argues that the district court improperly dismissed her defamation (slander) claim against Dr. Berke. Anderson claims that, contrary to what the district court found, she properly alleged the elements of a defamation claim against him. First, she claims that Dr. Berke stated that she "altered a medical release form rendering it invalid to release confidential medical information." Second, she argues that she "self-published" Dr. Berke's statements to third parties when explaining to them why she was fired. Third, she argues that she was harmed by Dr. Berke's statements because, as a result of them, the City fired her. Finally, she claims that she was further harmed because prospective employers are now reluctant to hire her.

Dr. Berke responds that the statements that Anderson says are defamatory were made by him during a grievance hearing on Anderson's discharge by the City. As such, Dr. Berke contends that his testimony is absolutely privileged under Texas law. Additionally, he claims that the district court properly dismissed Anderson's defamation claim because the testimony that he gave--including the statement about Anderson altering a medical release form--was true.

The district court properly dismissed Anderson's defamation claim against Dr. Berke.  First, under Texas law, statements made during judicial or quasi-judicial proceedings may not serve as the basis for a defamation claim.  See Putter v. Anderson, 601 S.W.2d 73, 76-77 (Tex. App--Dallas 1980).  Since Dr. Berke's allegedly defamatory statements were made during a quasi-judicial administrative hearing regarding Anderson's termination, they cannot serve as the basis of a defamation claim against him.  Second, as the district court properly concluded, Anderson never alleged that Dr. Berke's statements were false, and her own version of the facts of the case demonstrates that they were true (e.g., Anderson admits to not signing clean medical release forms).  Accordingly, the district court correctly dismissed Anderson's defamation claim against Dr. Berke.  See Reeves v. Western Co. of North America, 867 S.W.2d 385, 393 (Tex. App.--San Antonio 1993, writ denied) (holding that only a false statement can constitute actionable slander).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.  Costs are assessed against Anderson.

27